UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH DESROSIERS,

Plaintiff,

-v-

SUMMIT SECURITY SERVICES, INC.
and ALLIED UNIVERSAL SECURITY
SERVICES, LLC, as Successor in interest
to Summit Security Services, Inc.,

Defendants.

21-CV-10941 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Joseph Desrosiers brought this action against Summit Security Services, Inc.,

("Summit") and Allied Universal Security Services, LLC ("Allied") claiming (1) intentional

discrimination on the basis of national origin in violation of Title VII; (2) intentional

discrimination on the basis of age in violation of the Age Discrimination in Employment Act

(ADEA); (3) intentional discrimination on the basis of national origin and age in violation of the

New York State Human Rights Law (NYSHRL); and (4) intentional discrimination on the basis

of national origin and age in violation of the New York City Human Rights Law (NYCHRL).

Before the Court is a motion by the defendants to dismiss the complaint for failure to state a

claim.  For the reasons that follow, the Defendants' motion is granted.

I.      **Background**

The following facts are drawn from the complaint and are assumed true for purposes of

this motion.

Desrosiers is of Haitian origin and was born in 1954.  (Compl. ¶ 19.)  Beginning in 2006,

he began working for Securitas Security, Inc., another security firm that is not a defendant in this

lawsuit.  (Compl. ¶ 20.)  In May 2017, Summit assumed responsibility for security at 2

Broadway, New York, NY, the building to which Desrosiers had been assigned, and he began working for Summit as a Security Supervisor on the 3:20 pm–midnight shift.  (Compl. ¶¶ 20–1.) Desrosiers worked for Summit until termination of his employment on December 28, 2018, an event which led eventually to this lawsuit.  (Compl. ¶ 37.)  The events leading up to Desrosiers's termination are as follows.  On June 2018, Desrosiers received a disciplinary notice, which he claims was "unjustified."  (Compl. ¶ 24.)  Then, on January 4, 2019, Desrosiers received a "Final Warning" from Summit, accusing Desrosiers of "substandard work," "carelessness," and "unprofessional" activity, and of failing to inform the Site Manager, Brian Hackett, that Desrosiers would be unable to cover a shift on December 4, 2018.  (Compl. ¶ 25.)  After receiving this "Final Warning," Desrosiers was told that Summit no longer had work for him. (Compl. ¶ 37.)  Desrosiers claims that the justifications for the Final Warning were "totally bogus," and that the December 4, 2018 incident was used as a mere "pretext" to "undermine [Desrosiers's] job standing for no justified reason."  (Compl. ¶ 29, 33.)

Desrosiers asserts that he was "treated differently and less well than his younger and non-Haitian coworkers with respect to terms, conditions, and benefits of employment."  (Compl. ¶ 23.)  He also claims that the "Final Warning was excessive," that he "was singled out and targeted for no justifiable reason," and that "[y]ounger and non-Haitian employees have committed similar or more egregious acts without consequence."  (Compl. ¶ 26.)  Desrosiers gives no examples of that "similar or more egregious" behavior, nor any descriptions of who those younger and non-Haitian employees were, their job descriptions, whether they had the same supervisor, or whether they were in other respects similarly situated to him.

Desrosiers also alleges that Summit's Site Supervisor, Brian Hackett, made comments and acted in certain ways evidencing Summit's discriminatory intent in firing him.  Desrosiers

alleges that he would often speak his native language in the workplace to fellow Haitians, and that Mr. Hackett "often overheard these conversations and asked 'What language is that? We just speak English here.'" (Compl. ¶ 38.) "On other occasions," Mr. Hackett, referring to Desrosiers's accent, would state "In Haiti, things aren't good." (*Id.*) Desrosiers took these statements as evidence of discriminatory animus related to his national origin. (*Id.*) Mr. Hackett is also alleged to have "often directed [Desrosiers] to give a difficult time to employees who were of a protected age group," and to have "often" overheard Desrosiers discussing retirement plans with another older coworker, upon which Hackett "would show his displeasure at the subject matter of retirement" and then "often ask plaintiff when he intended to retire." (Compl. ¶ 40.) Desrosiers does not allege that Hackett was a decisionmaker with respect to hiring and firing, and claims that he was told of his termination by Robert Banks, the HR Supervisor. (Compl. ¶ 37.) His "Final Warning" was signed by Banks and Charles Scirotta, the regional manager. (Compl. ¶ 23, 25.)

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *id*. at 558, and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "On a motion to dismiss, all factual

allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

## III.   Discussion

### A.   Title VII National Origin Discrimination Claim

At the pleading stage in an employment discrimination case brought under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 86 (2d Cir. 2015).  "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss . . . it must at a minimum assert nonconclusory factual matter sufficient to 'nudge its claims' 'across the line from conceivable to plausible' to proceed." *EEOC v. Port Auth. of New York and New Jerse*y, 768 F.3d 247, 254 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 680).  "A plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31–32 (2d Cir. 2016) (quoting *Littlejohn*, 795 F.3d at 310–11).  In the Second Circuit, "[c]ourts . . . will dismiss [national origin]-based employment discrimination suits at the Rule 12(b)(6) stage even where a plaintiff pleads some facts relevant to showing discriminatory intent if those facts are too attenuated from the alleged adverse employment action." *Williams v. Classic Sec.*, No. 18-CV-1691, 2019 WL 4511953 (S.D.N.Y. Sept. 19, 2019).

Here, Desrosiers makes two arguments that he has pleaded sufficient facts to survive a motion to dismiss his Title VII national origin discrimination claims.  First, Desrosiers alleges that "[he] was singled out and targeted for no justifiable reason" while "non-Haitian employees have committed similar or more egregious acts without consequence." (Compl. ¶ 26.)  Second, Desrosiers alleges that the comments Hackett made about his native language and the situation in

4

Haiti provide evidence of discriminatory intent in his termination.  Neither of these allegations is sufficient to survive a motion to dismiss.

### 1.    National Origin Disparate Treatment Claim

"[A] plaintiff can raise an inference of discrimination by demonstrating the disparate treatment of at least one similarly situated employee outside her protected group, and sufficient facts from which it may be reasonably inferred that 'the plaintiff's and comparator's circumstances . . . bear a reasonably close resemblance.'"  *Brown v. New York City Dep't of Educ.*, No. 20-CV-2424, 2021 WL 4943490, at *9 (S.D.N.Y. Aug. 31, 2021), *report and recommendation adopted*, No. 20-CV-2424, 2021 WL 4296379 (S.D.N.Y. Sept. 20, 2021) (quoting *Hu v. City of New York*, 927 F.3d 81, 96-97 (2d. Cir. 2019)).  However, "[a]t the pleading stage, a complaint 'generally must identify the similarly situated employees with some specificity.'"  *Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205, 2020 WL 4340947, at *9 (S.D.N.Y. July 28, 2020) (quoting *Hausdorf v. N.Y.C. Dep't of Educ.*, No. 17-CV-2115, 2018 WL 1871945, at *7 (S.D.N.Y. Jan. 25, 2018)).  Indeed, a plaintiff relying on disparate treatment evidence to create an inference that discrimination motivated their adverse employment action "must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70 (2d Cir. 2016) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).  When a disparate treatment claim is "entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants," dismissal is often appropriate.  *Blige v. City Univ. of New York*, No. 15-CV-08873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017).

Here, Desrosiers alleges nothing about the type of conduct his purported comparators engaged in, the dates and times of their "similar or more egregious acts," whether they had the same supervisors or worked at the same site, nor even their job descriptions. Indeed, he has raised no claims about how these other employees were situated at all beyond their status as employees and their national origins. His complaint thus fails to plead, as it must, that the employees who did not share his national origin were "similarly situated in all material respects." *Johnson*, 638 F. App'x at 70. Courts in this circuit have dismissed claims even when plaintiffs allege some minimal, but not sufficient, facts about comparators' allegedly similar conduct. *See Marcus*, 661 F. App'x at 32 (finding no minimal inference of discrimination when plaintiff failed to allege "information as to whether [the alleged comparators] were otherwise similarly situated or the specifics of their conduct," even after alleging the comparators had, like the plaintiff, used profanity in the workplace). Desrosiers has failed even to allege the kind of minimal facts about his alleged comparators that were nonetheless insufficient to survive dismissal in *Marcus*. He therefore fails to raise an inference of discriminatory motivation on the basis of disparate treatment.

### 2.   Hackett's Comments on Desrosiers's National Origin

"As a general matter, verbal comments may raise an inference of discrimination, but not where they lack a causal nexus to the termination decision." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017). The Second Circuit uses a four-factor test to determine whether alleged offensive remarks suggest discriminatory bias or are merely "stray remarks," which "generally do not constitute sufficient evidence to support a case of employment discrimination." *Martin v. City Univ. of New York*, No. 17-CV-6791, 2018 WL 6510805, at *9 (S.D.N.Y. Dec. 11, 2018) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). The test considers: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2)

when the remark was made in relation to the employment decision at issue; (3) the content of the

remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the

context in which the remark was made (i.e., whether it was related to the decision-making

process)." *Fried v. LVI Servs., Inc*., 500 F. App'x 39, 41 (2d Cir. 2012) (quoting *Henry v. Wyeth

Pharmaceuticals*, 616 F.3d 134, 149 (2d Cir. 2010)).  Applying this analysis to the alleged

national origin-related comments in this case, the Court concludes that Desrosiers has failed to

raise a plausible inference of discriminatory intent by reference to Hackett's comments.

### a.      Who Made the Remarks

The first factor of the stray remarks test asks who made the remark.  Remarks made by

the decisionmaker who took the adverse employment action provide much better evidence of

discrimination than do remarks made by those unrelated to the decisionmaking process.  *Silver v.

N. Shore Univ. Hosp*., 490 F. Supp. 2d 354, 362–63 (S.D.N.Y. 2007) ("Stray remarks by non-

decision-makers or by decision-makers unrelated to the decision process are rarely given great

weight.").  Desrosiers fails to allege that Hackett, who made the allegedly discriminatory

remarks referencing Desrosiers's Haitian origin, was in fact the decisionmaker with respect to his

termination.  While Hackett was the "Site Manager," Desrosiers makes no claims as to his

authority to fire.  *Cf. Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438

(S.D.N.Y. 2015) ("[A]lthough Tropp was Plaintiff's supervisor both at the time he made the

comments and at the time she was fired, the Complaint does not allege that the remarks were

'related to the decision-making process' resulting in Plaintiff's termination.").  Indeed,

Desrosiers was informed of his termination by Banks, the "HR Supervisor" (Compl. ¶ 37), and

his "Final Warning," the precipitating cause of his eventual termination, was signed not by

Hackett but by Scirotta and Banks.  (Compl. ¶ 25.)  Desrosiers's failure to allege that Hackett

was the relevant decisionmaker in Desrosiers's termination strongly weighs against considering the alleged comments Hackett made as to Desrosiers's national origin to be evidence of discriminatory motivation in Desrosiers's termination.  *See Soto v. Marist Coll.*, No. 17-CV-7976, 2019 WL 2371713, at *5 (S.D.N.Y. June 5, 2019) ("Plaintiff fails to plead any facts indicting who was involved in the decision to end his employment, precluding an inference that the decisionmaker was influenced by improper considerations.").

### b.      When the Remarks Were Made

The second factor considered by the stray remarks test asks about the temporal proximity of the remarks in relation to the adverse employment decision.  "The more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."  *Henry*, 616 F.3d at 149.  Here, Desrosiers has provided no definite timeframe for the allegedly discriminatory remarks directed to his national origin.  He claims only that Mr. Hackett "often" overhead Desrosiers's conversations in Haitian and "asked 'What language is that? We just speak English here,'" and that "on other occasions" Mr. Hackett "would refer to plaintiff's accent and state 'In Haiti, things aren't good.'"  (Compl. ¶ 38.) Several alleged off-color comments over the course of a year and a half of employment are not sufficient to support allegations of discrimination.  *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015) (summary order) ("[S]everal off-color comments over the course of a year and a half about [Plaintiff's] being black and Jewish . . . were no more than stray remarks.").  Desrosiers's failure to specify a meaningful time frame for these remarks in relation to his firing is part of his general "fail[ure] to plead context necessary to determine whether [these] are discriminatory statements, including [*inter alia*] . . . when the statements were made, []what, if anything, led up to the statements, and []whether these statements were either

temporally or substantively related to any adverse employment action." *Brown*, 2021 WL 4943490 at *9.

**c.      The Content of the Remarks**

The third factor of the stray remark test asks whether a reasonable juror could find the content of the remark discriminatory. Here, it is far from clear that a reasonable jury could find that the content of Hackett's remarks was discriminatory.

Hackett's first alleged national origin-related remarks were the question and comment, made upon overhearing Desrosiers speaking in Haitian, "What language is that? We just speak English here." (Compl. ¶ 38.) On its face, this statement relates to the Haitian language, not necessarily to Haitian as a national origin protected class. "Title VII does not expressly identify language as a protected class." *Durand v. Excelsior Care Grp. LLC*, No. 19-CV-2810, 2020 WL 7246437, at *6 (E.D.N.Y. Dec. 9, 2020). Nonetheless, "evidence of language discrimination may permit a jury finding of national origin or race discrimination," such as when it is accompanied by evidence more directly proving discrimination. *Panjwani v. Jet Way Sec. & Investigations, LLC*, No. 13-CV-7186, 2016 WL 3675331, at *13 (E.D.N.Y. Feb. 26, 2016), *report and recommendation adopted*, No. 13-CV-7186, 2016 WL 3702969 (E.D.N.Y. July 7, 2016).

Such evidence is lacking in this case. The content of Hackett's comment could be interpreted as off-color, but Desrosiers does not provide sufficient context to transform it into evidence of discrimination. Without more, and given that language is not a protected Title VII class, the content of this statement does not raise a strong discriminatory inference. Moreover, taking the content of the statement at face value, Hackett's comment could be understood as expressing the existence of an English language policy in the workplace, and policies requiring

9

the use of English are not in themselves discriminatory, and so cannot, standing alone, raise an inference of discrimination.  *See Durand*, 2020 WL 7246437 at *6 (dismissing national origin discrimination complaint where plaintiffs were prohibited from speaking Creole or French at work); *Joseph v. N. Shore Univ. Hosp.*, 473 F. App'x 34, 37 (2d Cir. 2012) (stating that under Title VII, "a policy [of] having a preference for English over all other languages is not evidence of discriminatory intent").

The only other comment relating to Desrosiers's national origin was Hackett's statement, made in reference to Desrosiers's accent, that "In Haiti, things are bad."  (Compl. ¶ 38.)  Again, the content of this remark raises little inference of discrimination.  Hackett appears to simply be commenting on the state of things in the nation of Haiti, which is far from facially discriminatory or derogatory, and Desrosiers has not pleaded any additional context that might allow an inference of discriminatory intent to be drawn from such an isolated and facially innocuous remark.  "[I]solated remarks alone are not enough to support a discrimination claim, especially where such comments are not even facially malicious or derogatory."  *Brady v. Calyon Sec. (USA)*, No. 05-CV-3470, 2007 WL 4440926, at *14 (S.D.N.Y. Dec. 17, 2007).

### d.      The Relation of the Remarks to the Decisionmaking Process

The final factor of the stray remark test asks about the connection between the alleged discriminatory remarks and the adverse employment decision.  Even assuming that Mr. Hackett was a decisionmaker in respect to Desrosiers's firing, that the comments were made close in time to the firing, and that a rational jury could find the content of the remarks discriminatory—all of which are doubtful here—without some "causal connection" to the adverse employment decision, "off-color comments are no more than stray remarks.  And 'stray remarks,' without 'other indicia of discrimination,' are not enough."  *White v. Andy Frain Servs., Inc.*, 629 F.

App'x 131, 134 (2d Cir. 2015) (summary order) (quoting *Danzer*, 151 F.3d at 56).  "The more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination," *Henry*, 616 F.3d at 149, such that "[e]ven statements that are clearly racist, ageist, and religiously inappropriate are not discriminatory when they are stray remarks not connected to the adverse employment decision." *Shukla v. Deloitte Consulting LLP*, No. 119-CV-10578, 2020 WL 3181785, at *9 (S.D.N.Y. June 15, 2020) (quoting *Gautam v. Prudential Fin., Inc*., No. 06-CV-03614, 2008 WL 11417411, at *7 (E.D.N.Y. Sept. 3, 2008)).

The comments alleged here fall short of being "clearly" inappropriate, and Desrosiers has alleged no facts that show a nexus between the statements and his termination.  Without any context to place the comments in some kind of relation to his adverse employment decision—and indeed, without having alleged who the relevant decisionmakers even were—Desrosiers has done no more than plead the existence of some possibly off-color isolated remarks.  Even assuming Hackett was the relevant decisionmaker, "[i]solated derogatory remarks by a decisionmaker alone do not raise an inference of discrimination" absent "a nexus between the remarks and the adverse employment action."  *Gonzalez v. Allied Barton Sec. Servs*., No. 08-CV-9291, 2010 WL 3766964, at *5 (S.D.N.Y. Sept. 7, 2010) (citing *Danzer*, 151 F.3d at 56), *report and recommendation adopted* 2010 WL 3766954 (S.D.N.Y. Sept. 27, 2010).  Courts in this circuit have dismissed claims alleging statements that are more facially discriminatory than the ones alleged here—including remarks made by decisionmakers—for failure to plead a sufficient nexus between the statements and the adverse employment decision.  *See, e.g.*, *Martin*, 2018 WL 6510805, at *9 (dismissing race discrimination claim for lack of casual connection where a decisionmaker made stray remark that "those Irish guys are always up to something"); *Mesias*,

106 F. Supp. 3d at 438 (S.D.N.Y. 2015) (dismissing complaint for lack of nexus with decisionmaking process where supervisor stated multiple times that he was tired of working with "menopausal women").

Desrosiers's attempt to allege national origin discrimination under Title VII fails. Accordingly, Count One of Desrosiers's Complaint is dismissed as to both Defendants.

### B.     ADEA Age Discrimination Claim

For an ADEA discrimination claim to survive a motion to dismiss, a plaintiff "must plausibly allege that adverse action was taken against her by her employer, and that her age was the 'but-for' cause of the adverse action." *Marcus*, 661 F. App'x at 31–32 (quoting *Vega*, 801 F.3d at 87).  As with his national origin discrimination claim, Desrosiers makes two allegations about the age discrimination he is alleged to have suffered.   First, he makes a disparate treatment allegation, based on essentially the same allegations as his national origin claim—that "[Desrosiers] was singled out and targeted for no justifiable reason" while "younger . . . employees have committed similar or more egregious acts without consequence."  (Compl. ¶ 23.) This claim fails for the same reasons outlined above in regard to Desrosiers's national origin disparate treatment evidence: Desrosiers has not pleaded with any specificity that the younger employees were similarly situated to him in any meaningful way.

Second, Desrosiers makes an argument that alleged age-related comments Hackett made and directions he gave raise an inference that age discrimination was the but-for cause of Desrosiers's termination.  In particular, Desrosiers alleges that Hackett "often directed plaintiff to give a difficult time to [five other] employees who were of a protected age group" (Compl. ¶ 39), and that Mr. Hackett "show[ed] his displeasure at the subject matter of retirement" when overhearing Desrosiers discussing it, and "would then often ask plaintiff when he intended to

retire." (Compl. ¶ 40.)  This attempt to allege that Desrosier's termination was due to age discrimination also fails to state a claim.

### 1.   Hackett's Directive to Give Other Employees of the Protected Age Group a "Hard Time"

An inference of discrimination can arise from discriminatory behavior on the part of the employer towards other members of a plaintiff's protected class.  *See Littlejohn*, 795 F.3d at 312 (inference of discrimination can arise from, *inter alia*, invidious comments about others in the employee's protected group).  However, Desrosiers's claim that Hackett directed him to "give a difficult time" to older employees is simply "not detailed enough for Plaintiff to allege an inference of discrimination."  *Brown*, 2021 WL 4943490 at *9.  Desrosiers has not alleged what exactly he was asked to do to the older employees, the language Hackett used in making the request, the time at which this happened, or the circumstances leading up to the request.  Nor has he alleged that these actions had any nexus to his eventual termination.  Without additional context, such a thin allegation does not raise a plausible inference that age discrimination was the but-for cause of Desrosiers's termination.

### 2.   Hackett's Age-Related Comments

Desrosiers also alleges that Hackett, upon overhearing Desrosiers discussing the topic of retirement plans with an older co-worker, "would show his displeasure at the subject matter of retirement.  Mr. Hackett would then often ask plaintiff when he intended to retire." (Compl. ¶ 40.)  These allegations, he argues, raise an inference that age discrimination was the but-for cause of his termination.  They do not.  Like Hackett's comments relating to Desrosiers's national origin, above, these comments are mere "stray remarks" that fail to "assert nonconclusory factual matter sufficient to nudge these claims across the line from conceivable to plausible."  *EEOC*, 768 F.3d at 254 (quoting *Iqbal*, 556 U.S. at 680).

Much of the analysis is the same as for Hackett's alleged national origin-related comments above.  Desrosiers fails to allege that Hackett was a decisionmaker in relation to his termination, and fails to allege with any specificity the time frame in which these statements were made and whether they occurred close in time to his firing.  And once again, Desrosiers has not alleged a sufficient causal nexus between the statements and his termination.  *See Moore v. Verizon*, No. 13-CV-6467, 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (finding that the comments "why don't you retire" and "are you old enough to retire," as well as insulting remarks that plaintiff experienced hearing loss due to age, were non-actionable stray remarks because they "[were] not alleged to have arisen in a context at all related to the decision to suspend and later terminate plaintiff").

The only difference in analysis between these comments and Hackett's national origin-related comments is their content.  Again, however, the content of these statements alone is not sufficient to support an inference of discriminatory intent.  On its face, expressing displeasure at the subject of retirement, rather than evidencing discriminatory age-related animus, shows that Hackett was displeased at the thought of Desrosiers retiring and leaving the company, rather than that he held discriminatory animus towards Desrosiers because of his age.  His questions as to when Desrosiers planned to retire are similarly facially neutral, especially when the comments lack any relevant context that might reveal a hidden discriminatory intent.

Desrosiers's ADEA age discrimination claims fail to support a plausible inference that age-related discrimination was the but-for cause of his termination. Accordingly, Count Two of his Complaint is dismissed as to both defendants.

### C.    NYCHRL and NYSHRL Claims

Desrosiers's NYSHRL claims of both national origin and age discrimination can be dismissed for the same reasons as his Title VII and ADEA claims.  NYSHRL claims of age and

national origin discrimination are analyzed using the same standard as ADEA and Title VII claims. *Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) ("Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims brought under the ADEA."); *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) ("Claims under both Title VII and the NYSHRL . . . are generally treated as 'analytically identical,' and addressed together." (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019))). Counts Three and Four of Desrosiers's complaint are therefore dismissed as to both defendants.

Claims brought under the NYCHRL are analyzed under a more liberal standard than are federal anti-discrimination claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" (quoting *Albunio v. City of New York*, 16 N.Y.3d 472, 477–78 (2011))). To succeed on a discrimination claim brought under the NYCHRL, plaintiffs need only show "by a preponderance of the evidence that [they have] been treated less well than other employees because of [their protected class.]" *Id.* at 110 (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)).

However, the NYCHRL is not a "general civility code"; plaintiffs must still show that they have been treated "less well" *because of* their protected characteristics. *Id.* "Even under the NYCHRL, a plaintiff must provide some allegations from which a reasonable inference of improper motivation could be drawn." *White v. Bridge Inc.*, No. 18-CV-1689, 2019 WL 4805896, at *4 (S.D.N.Y. Sept. 30, 2019). The deficiencies in Desrosiers's allegations—the

failure to identify with any specificity that comparator employees were similarly situated, the absence of allegations that any potentially discriminatory comments were uttered by a decisionmaker or had any connection to Desrosiers's termination—are fatal to his NYCHRL discrimination claims as they are to his federal claims. *See Cano v. SEIU Loc. 32BJ*, No. 19-CV-08810, 2021 WL 4927166, at *9 (S.D.N.Y. June 15, 2021), *report and recommendation adopted*, No. 19-CV-8810, 2021 WL 4480274 (S.D.N.Y. Sept. 30, 2021) ("[E]ven though the standard for stating a plausible claim of discrimination under the NYCHRL is lower than under federal and state law, given the absence of any facts suggesting that [] management was motivated by [discriminatory intent] in terminating Plaintiff's employment, the [discrimination] claim under the city law also should be dismissed."). Accordingly, Counts Five and Six of Desrosiers's complaint are dismissed.

## IV.    Conclusion

Defendants Summit and Allied's motion to dismiss is hereby GRANTED and all counts against Summit and Allied are DISMISSED.

The Clerk of Court is respectfully directed to close the motion at ECF No. 16 and to close this case.

SO ORDERED.

Dated: October 21, 2022
       New York, New York

_____
            J. PAUL OETKEN
        United States District Judge